UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **ERIC ROSS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. NO.:20-CV-** |
| | : | |
| **ELECTRIC BOAT CORPORATION,** | : | <u>**Jury Trial Demanded**</u> |
| **alias,** | : | |
| **Defendant** | : | |

<u>**COMPLAINT**</u>

## I.    <u>Introduction</u>

This action is brought by the Plaintiff, Eric Ross, against his former employer, Defendant Electric Boat Corporation, alias, seeking compensatory and punitive damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of Defendant's violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq.*, the Rhode Island Civil Rights with Disabilities Act ("CRPD"), R.I. Gen. Laws § 42-87-1 *et seq.*, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*

## II.    <u>Parties</u>

1.     At all times relevant to this action, Plaintiff Eric Ross was a resident of the City of East Providence, Count of Providence, and State of Rhode Island.

2.     Defendant Electric Boat Corporation, *alias,* is a foreign profit corporation duly organized and existing under the laws of the State of Delaware with a principal place of business located at 75 Eastern Point Road, Groton, Connecticut, 06340, and duly registered to conduct business and doing business in Rhode Island, with a registered agent located at 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914.

3.      At all relevant times, Defendant was engaged in commerce and/or in an industry affecting commerce.

### III.   Jurisdiction

4.      The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADA.

5.      Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV.   Venue

6.      Venue is proper in this Court insofar as the Defendant resides in or is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.   Exhaustion of Administrative Remedies

7.      On or about October 11, 2019, Plaintiff filed a charge with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, alleging discrimination on the basis of his disability, failure to provide reasonable accommodation and enter into an interactive dialogue, and retaliation.

8.      Thereafter, with more than one hundred and twenty (120) days but not more than two (2) years having elapsed since the filing of Plaintiff's charge of discrimination, Plaintiff filed a Request for Notice of Right to Sue with the RICHR and the EEOC.

9.      On September 15, 2020, the RICHR issued Plaintiff a Notice of Right to Sue.

10.     On or about October 20, 2020, Plaintiff was issued a Notice of Right to Sue by the EEOC.

11. Accordingly, insofar as Plaintiff has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, Plaintiff has timely instituted suit in the within matter.

12. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI. Material Facts

### Factual Background

13. Although he was a recent hire, Mr. Ross was a loyal, dedicated, and productive employee of Defendant for approximately six (6) months prior to the onset of his disability.

14. Specifically, he was hired as an outside machinist on February 14, 2018 and on August 19, 2018 he received a raise as a consequence of his mid-year review and successfully completing his probationary period.

15. On or about August 6, 2018, Mr. Ross began experiencing severe gastrointestinal pain that required him to be out of work.

16. Dr. Susan Andrews ("Dr. Andrews"), Defendant's Medical Director, informed Mr. Ross that he had to submit medical documentation from his primary care physician and his gastroenterologist to justify his medical leave.

17. On or about August 8, 2018, Dr. Andrews provided Mr. Ross with documentation prepared by Defendant for his primary care physician, including "Job Task Analysis," which outlined the essential job functions of an Outside Machinist, "Guidelines for Evaluating Impairments," "Physical/Mental impairment Evaluation Checklist" to be filled out by his treating physician, and an authorization to release his medical records to Defendant.

18. Mr. Ross provided these documents to his primary care provider at East Bay Community Action Program ("EBCAP"), Mary K. Mumford Haley, RNP ("RNP Mumford

Haley"), who returned the Physical/Mental impairment Evaluation Checklist to Dr. Andrews on or about August 9, 2018.

19.     On or about August 28, 2018, Mr. Ross was cleared by his doctors and Dr. Andrews to return to full duty.

20.     Unfortunately, on or about August 30, 2018, Mr. Ross' illness suddenly worsened, and he presented to The Miriam Hospital at about 9:30 p.m. with abdominal pain, fevers, vomiting, and acute non-intractable headache, unspecified headache type.

21.     He was also tested and treated for aseptic meningitis.

22.     Mr. Ross transferred to Rhode Island Hospital on or about September 3, 2018, and this horrific confluence of medical issues required hospitalization until on or about September 6, 2018, when he was discharged to his primary care physician for further treatment.

23.     Mr. Ross notified Defendant of his medical developments while he was in the hospital.

24.     Immediately upon his discharge, he applied for and received a medical leave from Defendant on account of his disability.

25.     In addition to Mr. Ross providing more medical documentation, Dr. Andrews even spoke with his treating physician at Rhode Island Hospital to discuss the possibility of meningitis exposure to other employees of Defendant.

26.     From on or about September through November, Mr. Ross experienced numerous hospitalizations and treated with multiple physicians in an effort to understand and treat his health conditions.

27.     He was diagnosed with migraines, severe abdominal pain, fevers, meningitis and/or MRSA, and rhabdomyolysis, among others (the "Disabilities").

28.     During that time, Mr. Ross was repeatedly harassed by employees of Defendant, including Dr. Andrews, William Tavares ("Mr. Tavares"), Physician Assistant at the Quonset Point medical dispensary, and Linda Saleh, Chief of Human Resources ("Ms. Saleh"), who persisted in demanding more and more of Mr. Ross' medical records, including his complete medical file from University Gastroenterology, which, upon information and belief, Defendant obtained.

29.     On or about September 10, 2018, Dr. Andrews received a medical note from Dr. Robert Riggio at Rhode Island Hospital Neurology Clinic stating that he would not return to work until September 21, 2018.

30.     On or about September 17, 2018, RNP Mumford Haley sent a follow-up letter extending the time that Mr. Ross needed to be out of work until October 25, 2018, when he was next scheduled to see a neurologist with the Neurology Clinic.

31.     However, Dr. Andrews continued to demand additional documentation beyond what was required to confirm that Mr. Ross was suffering from a qualifying disability.

32.     In a letter addressed to Dr. Andrews dated on or about September 21, 2018, another one of Mr. Ross's primary care providers at EBCAP, Laura Voller, RN, expressed some surprise at the degree of information that Defendant was requesting, stating, "You should be aware that this is not something we provide to employers."

33.     RN Voller also explained,

> I spoke with Mary MumfordHaley's nurse, Cara, who informed me she already faxed over the hospital discharge paperwork to your attention.  The patient requested this, and although it is not something we would ordinarily do, we were happy to do so, given his request. However, this should be more than sufficient for your records.
>
> If you feel this response is insufficient, please have your Human Resources Department contact our office on Monday.

34.     As Defendant had previously been advised, on or about October 25, 2018, Mr. Ross treated with Dr. John Paddock to address his frequent and debilitating headaches.

35.     On or about October 27, 2018, Dr. Paddock wrote to Dr. Andrews to advise her that Mr. Ross was required to remain out of work until November 12, 2018.

36.     Unfortunately, Mr. Ross was rushed to Rhode Island Hospital again on October 30, 2018, where he was diagnosed with Rhabdomyolysis, requiring admittance and treatment until November 4, 2019.

37.     On November 13, 2018, EBCAP sent another letter requesting that Mr. Ross be out of work until November 17, 2018.

38.     On November 16, 2018, RNP Mumford Haley sent another letter to Defendant indicating that Mr. Ross was still under her care and could not return to work at that time and a return to work date would be decided after continuation of his treatment.

39.     Despite the information already provided, throughout that time, Mr. Ross continued to receive numerous threatening and hostile phone calls from Dr. Andrews both directly to himself and to his physicians, demanding more records, even while Mr. Ross was being hospitalized and fighting through significant renal and liver complications.

40.     Mr. Ross attempted to comply with Dr. Andrews' requests, but repeatedly asserted that what Dr. Andrews was requesting was beyond what Defendant was permitted to receive under applicable law.

41.     Mr. Ross perceived that Dr. Andrews grew angrier and more demanding as a direct result of Mr. Ross' attempt to assert his rights under the ADA and FEPA, among other statutes.

42.     Dr. Andrews threatened termination if he did not comply, which Mr. Ross found extremely stressful and believes that her calls and threats complicated and prolonged his recovery.

43.     Additionally, while Mr. Ross was hospitalized, Mr. Ross's treating physicians relayed to him that they had repeatedly informed Dr. Andrews that her requests were beyond what the hosptial's allowed them to produce to employers and asked that his employer contact the hospitals' HR and Legal departments in order to discuss the legal parameters of the requests.

44.     To Mr. Ross's knowledge, neither Dr. Andrews nor Ms. Saleh pursued that path.

45.     Upon information and belief, Mr. Ross's direct supervisor at Electric Boat also attempted to advocate on his behalf to Ms. Saleh, asserting that Mr. Ross was a great worker and asking that they let him recover and return to work when he was ready.

46.     Thereafter, Mr. Ross continued follow-up care with his primary care providers at EBCAP, who sent another letter to Defendant dated December 3, 2018 advising that he could return to work on December 17, 2018 *without any restrictions*.

47.     On or about December 11, 2018, Mr. Ross hand-delivered the note from RNP Mumford Haley to Dr. Andrews at the infirmary at Electric Boat.

48.     Mr. Ross then met with Dr. Andrews and Ms. Saleh on December 14, 2018 at the Employer's dispensary to complete a fitness for duty evaluation.

49.     Despite the fact that the physician's note informed that Mr. Ross was cleared to work without restrictions, at that meeting, Dr. Andrews continued to demand even more documents and explained that additional documentation from his outside providers was needed in order to determine his fitness for duty.

50.     However, Dr. Andrews did not conduct a fitness for duty evaluation on December 14, 2018.

51.     Nevertheless, notwithstanding his full duty release to work, the Defendant sent Mr. Ross a certified letter on December 18, 2018 advising that he had been "administratively terminated effective December 18, 2018 due to medical reasons."

52.     Following Plaintiff's termination, Defendant falsely claimed that Mr. Ross had been terminated because of his refusal to cooperate in the interactive process by providing all of the medical documentation demanded.

### VII.   Disability Discrimination in Violation of the ADA, CRPD, FEPA, and RICRA

#### *Protected Impairment*

53.     At all relevant times, Plaintiff suffered from a disability, as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA; specifically Plaintiff suffered from migraines and/or Acute non-intractable headache unspecified headache type, severe abdominal pain, meningitis and/or MRSA, and rhabdomyolysis, among others.

54.     At all relevant times, Plaintiff's condition substantially limited one or more major life activities, including but not limited to concentration and working.

55.     At all relevant times, Defendant had a record of Plaintiff's impairments, as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA.

56.     At all relevant times, in the alternative, Defendant regarded and/or perceived Plaintiff as having an impairment, as that phrase is defined and applied under the ADA, FEPA, CRPD, and/or RICRA.

57.     Accordingly, even if Plaintiff was not suffering from a "disability," at all relevant times, Defendant regarded and/or perceived Plaintiff as being disabled and/or had a record of his impairment.

#### *Qualified Individual*

58.     At all relevant times, both before and after his medical leave, Plaintiff was able to perform his regular duties as an Outside Machinist, which clearly establishes his ability to perform the "essential" tasks required of his job "with or without reasonable accommodation."

59.     Accordingly, at all relevant times, Plaintiff was a qualified individual or otherwise qualified, as those terms are defined under the ADA, FEPA, CRPD, and/or RICRA.

### Adverse Employment Action

60.     Plaintiff began experiencing adverse employment action at the hands of Defendant almost immediately after he informed Defendant of his Disability and his need for reasonable accommodation in the form of a medical leave.

61.     Most notably, Defendant terminated Plaintiff's employment effective December 18, 2018.

### Disability Discrimination

62.     Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C § 12112(a).

63.     Additionally, § 12112(d)(4)(A) provides that "a covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

64.     Pursuant to the FEPA, it is unlawful "to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment" because of his disability.  R.I. Gen. Laws § 28-5-7(1)(ii).

65.     Defendant discriminated against Plaintiff for requesting a reasonable accommodation and because Defendant perceived Plaintiff as having a disability.

66.     Defendant discriminated against Plaintiff as stated above by taking adverse actions including: (1) demanding his "full medical profile" even though Plaintiff provided documentation as to his disabilities and medical conditions and ability to return to work; and (2) terminating Plaintiff, "due to medical reasons," after his healthcare provider notified Defendant that he could return to work on December 17, 2018 *without any restrictions* thereby prohibiting him from returning to the position that he was fully able and qualified to perform.

67.     Further, Defendant violated the ADA, FEPA, CRPD, and/or RICRA by directly contacting Plaintiff's medical providers, repeatedly, seeking additional information regarding Plaintiff's request for reasonable accommodation and by requesting medical information or documentation with respect to Plaintiff's request for reasonable accommodation beyond that allowed or required under the ADA, FEPA, CRPD, and/or RICRA.

### *Interference and Retaliation*

68.     Pursuant to the ADA, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by [the ADA]."  42 U.S.C. § 12203(b).

69.     Pursuant to the FEPA, it is unlawful "[f]or any person, whether or not an employer, … to aid, abet, incite, compel, or coerce the doing of any act declared by [the FEPA] to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of [the FEPA]…, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice …"  R.I. Gen. Laws § 28-5-7(6).

70.     Defendant retaliated or discriminated against Plaintiff for requesting a reasonable accommodation.

71.     Defendant retaliated or discriminated against Plaintiff for asserting that Defendant was violating his statutory rights by demanding medical information or documentation with

respect to Plaintiff's request for reasonable accommodation beyond that allowed or required under the ADA, FEPA, CRPD, and/or RICRA.

72.     Defendant interfered with Plaintiff's rights under the ADA and FEPA.

73.     Defendant unlawfully intimidated or threatened Plaintiff in violation of the ADA and FEPA.

74.     Defendant retaliated, interfered, intimidated, and/or threatened Plaintiff as stated above by taking the adverse actions including: (1) demanding his "full medical profile" even though Plaintiff provided documentation as to his disabilities and medical conditions;  (2) repeatedly making threatening and hostile phone calls from Dr. Andrews both directly to Plaintiff and to his physicians, demanding more records, even while Plaintiff was being hospitalized; (3) refusing to allow Plaintiff to return to work after he provided documentation that he did not need any restrictions; (4) terminating Plaintiff's employment; and (5) retroactively claiming Plaintiff was terminated for false, defamatory, retaliatory, inconsistent, contradictory, and clearly pretextual reasons.

75.     For the same reasons set forth in paragraphs 71-74, Defendant, by and through its agents, aided, abetted, incited, compelled or coerced acts in violation of the ADA and/or FEPA.

76.     For the same reasons set forth in the preceding paragraphs 71-74, Defendant, by and through its agents, obstructed or prevented compliance with the provisions of the FEPA as set forth herein.

### VIII.    General Employment Law Allegations

#### *Pretext and Discriminatory Animus*

77.     Defendant's intent to discriminate against Plaintiff on account of his disability, perceived impairment, or recorded impairment is further established, in part, by Plaintiff's abrupt termination after he demonstrated his ability to return to work without restrictions.

78.     The temporal proximity of adverse employment action against Plaintiff in relation to his requests for reasonable accommodation supports an inference of discriminatory intent.

79.     Defendant's retroactive justification for Plaintiff's termination for refusal to cooperate in the interactive process by providing all of the medical documentation demanded is contradicted by his termination letter that stated he was terminated "due to medical reasons."

80.     Defendant was entitled to, and did receive, sufficient medical documentation to determine whether he qualified for a reasonable accommodation medical leave.

81.     Furthermore, the fact that Defendant waited to terminate Mr. Ross until after his physician indicated that he could return to work without any accommodation supports an inference of discriminatory intent and that their stated reason was pretextual.

*Motivation and Harm*

82.     Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to those described herein, are in violation of the ADA, FEPA, CRPD, and/or RICRA and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

83.     As a proximate result of Defendant's wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer equitable and compensatory damages, including, but not limited to, pecuniary losses, loss of income, loss of benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to his professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## IX.   <u>Causes of Action</u>

84.     Plaintiff reasserts the allegation contained in paragraphs 1 through 83 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### <u>Count One</u>
### Americans with Disabilities Act
### 42 U.S.C. § 12101, *et seq.*
### *Discrimination, Failure to Accommodate, Interference, and Retaliation*

85.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the ADA, and thereby deprived him of rights secured under the ADA, causing him to suffer damages as aforesaid.

### <u>Count Two</u>
### Rhode Island Fair Employment Practices Act
### R.I. Gen. Laws § 28-5-1, *et seq.*
### *Discrimination, Failure to Accommodate, Interference, and Retaliation*

86.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's disability and violated Plaintiff's rights in violation of the FEPA, and thereby deprived Plaintiff of rights secured under the FEPA, causing him to suffer damages as aforesaid.

### <u>Count Three</u>
### Civil Rights of People with Disabilities
### R.I. Gen. Laws § 42-87-1, *et seq.*
### *Discrimination, Failure to Accommodate, Interference, and Retaliation*

87.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the CRPD and thereby deprived him of rights secured under the CRPD, causing him to suffer damages as aforesaid.

**Count Four**
**Rhode Island Civil Rights Act of 1990**
**R.I. Gen. Laws § 42-112-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation*

88.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's disability, and thereby wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

## X.     Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1.     A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADA, FEPA, CRPD, and/or RICRA.

2.     An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3.     An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay, other compensation and/or benefits, and to make him whole for all earnings and benefits he would have received but for Defendant's unlawful conduct.

4.     An award of compensatory damages.

5.     An award of exemplary and/or punitive damages.

6.     An award of liquidated damages.

7.     An award of prejudgment interest, reasonable attorneys' fees, and costs.

8.      Such other and further relief as this Court deems just and proper.

## XI.    <u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury on all counts so triable.

## XII.    <u>Designation of Trial Counsel</u>

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

<div style="margin-left:50%;">

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

</div>

**Dated:  November 17, 2020**          **/s/ Richard A. Sinapi, Esq.**       
                                         **/s/ Chloe A Davis, Esq.**       
                                         **Richard A. Sinapi, Esq. (#2977)**
                                         **Chloe A. Davis (#9334)**
                                         2374 Post Road, Suite 201
                                         Warwick, RI 02886
                                         Phone: (401)739-9690
                                         FAX: (401) 739-9040
                                         Email:  ras@sinapilaw.com
                                         Email:  cad@sinapilaw.com